IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES | : |
| | :    **CRIMINAL ACTION** |
| v. | : |
| | :    **No. 95-338-01** |
| SCOTT BAYRON | : |

**MEMORANDUM**

**Schiller, J.**                                                                                                   **February 18, 2021**

Before the Court is Scott Bayron's *pro se* motion for compassionate release. For the reasons that follow, the motion is granted.

**I.    FACTUAL BACKGROUND**

Bayron is currently incarcerated at FCI McKean because he committed two armed bank robberies in the early 1990s. One of the robberies occurred in Philadelphia in October 1993 and the other took place in Delaware in April 1994. He also conspired to commit those robberies and brandished a firearm during each. Bayron was 22 years old at the time he committed these crimes. Prior to the bank robberies, his only criminal history was one instance of allowing retail theft while he worked as a clerk in a convenience store in 1991.

In December of 1994, a Delaware district court sentenced Bayron to 117 months for the second bank robbery, which included a mandatory 60-month term on the charge for using and carrying a firearm in violation of 18 U.S.C. § 924(c). In 1996, this Court sentenced Bayron to 303 months, to run consecutively to the Delaware sentence, for a total combined sentence of 420 months. This Court's sentence consisted of 63 months for the robbery and conspiracy counts and a mandatory consecutive term of 240 months for Bayron's second conviction under 18 U.S.C. § 924(c).

Bayron has served over 26 years in prison for these offenses. He has also accrued 44 months of good conduct time, for a total of 360 months served. This equates to approximately 85.7% of his total sentence. Bayron's anticipated release date is October 14, 2024. His sentence also includes a five-year term of supervised release.

Bayron is being held at FCI McKean, where five inmates are actively infected with COVID-19 and 450 inmates—over fifty percent of the inmate population—have already been infected with the virus. *COVID-19 Cases*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus (last visited Feb. 17, 2021); *FCI McKean*, Federal Bureau of Prisons, https://www.bop.gov/locations/institutions/mck (last visited Feb. 17, 2021). Bayron is 49 years-old and overweight, with a body mass index (BMI) of 26.1. (Gov't's Resp. to Def.'s Mot. to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) [Gov't's Resp.] at 4.)

Bayron unsuccessfully asked the warden to support a motion for his compassionate release and appealed that denial prior to filing this *pro se* motion on December 28, 2020. (Def.'s Mot. to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) [Def.'s Mot.] at 4.) The basis for this motion for compassionate release is the First Step Act's reduction of the 20-year mandatory minimum sentence for a second conviction pursuant to 18 U.S.C. § 924(c). The Government opposes Bayron's motion and in its response, provided a summary of Baryon's health conditions, arguing that "he presents no certain risk factor related to COVID-19." (Gov't's Resp. at 4.) The Court ordered Defendant to supplement his motion with a letter regarding any efforts he has made at rehabilitation while incarcerated, such as employment, education, or other prison-sponsored activities, and whether he has any health conditions which could put him at risk of serious illness if he contracts COVID-19. Bayron supplemented his motion with a letter to the Court filed on February 8, 2021. (Def.'s Letter in Resp. to Court Order [Def.'s Reply].)

## II.     DISCUSSION

### A.     **Compassionate Release Statute**

Prior to 2018, courts could only grant an inmate compassionate release from incarceration pursuant to 18 U.S.C. § 3582(c)(1)(A) upon a motion filed by the Director of the Bureau of Prisons (BOP). *See* 18 U.S.C. § 3582(c)(1)(A) (2012); *United States v. Rodriguez*, 451 F. Supp. 3d 392, 395 (E.D. Pa. 2020). Section 603(b) of the First Step Act of 2018 expanded the availability of the compassionate release process by allowing defendants to directly petition the district court for a reduction of sentence. First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194 ("First Step Act").

Before the Court may consider a defendant's motion for compassionate release, the defendant must exhaust administrative rights with the BOP or thirty days must have passed since the submission of a request to the warden, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A). The district court must also "consider[] the factors set forth in section 3553(a) to the extent that they are applicable[.]" *Id*. Upon a motion of the defendant, the district court "may reduce [a federal inmate's] term of imprisonment" and "impose a term of probation or supervised release . . . if it finds that . . . extraordinary and compelling reasons warrant such a reduction." *Id.* § 3582(c)(1)(A)(i).

Congress did not define the term "extraordinary and compelling reasons" but rather directed the Sentencing Commission to define the term through an applicable policy statement. 28 U.S.C. § 994(t). In doing so, Congress explicitly advised the Sentencing Commission that, "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." *Id.* The Sentencing Commission has interpreted this directive to mean that rehabilitation of the defendant may be considered along with other factors to find extraordinary and compelling reasons for release. *See Rodriguez*, 451 F. Supp. 3d at 405 (citing U.S.S.G. § 1B1.13 cmt. n.3

("rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement.")).

A court's reduction of sentence must be "consistent with applicable policy statements issued by the Sentencing Commission." *Id*. § 3582(c)(1)(A). Prior to passage of the First Step Act, the Sentencing Commission adopted a policy statement regarding extraordinary and compelling reasons to warrant reduction of a sentence "[u]pon motion of the Director of the Bureau of Prisons[.]" U.S.S.G. § 1B1.13. Since passage of the First Step Act, the Sentencing Commission has not adopted a new policy statement to address defendant-filed motions for compassionate release. *Rodriguez*, 451 F. Supp. 3d at 397.[1] As a result, there is no policy statement of the Sentencing Commission applicable to motions for compassionate release filed by defendants under the First Step Act. *Id.* at 398 (quoting *United States v. Beck*, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019)).

The commentary to the policy statement pertaining to compassionate release motions brought by the Director of the BOP describes extraordinary and compelling reasons to release certain defendants, including those who are terminally ill, aging, or experience the death or incapacitation of a spouse or caregiver to their minor child. U.S.S.G. § 1B1.13 cmt. n1(A)-(C). The policy statement further enumerates that extraordinary and compelling reasons exist when a defendant has a serious physical or medical condition that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover[.]" U.S.S.G. § 1B1.13 cmt. n1(A)(ii). In the midst of the COVID-19 pandemic, the Government has taken the position that a defendant who presents a

---

[1] Many courts have pointed out that the Sentencing Commission has been unable to amend its policy statement because it has lacked a quorum to act. *See, e.g.*, *United States v. Marks*, 455 F. Supp. 3d 17, 24 (W.D.N.Y. 2020).

health condition identified by the CDC as increasing the risk of serious illness from COVID-19 qualifies as having extraordinary and compelling reasons for compassionate release. *See, e.g.*, *United States v. Maldonado*, Crim. A. No. 17-138, 2021 WL 148518, at *3 (E.D. Pa. Jan. 15, 2021) ("The government acknowledges that an inmate who presents a risk factor identified by the CDC as increasing the risk of an adverse outcome from COVID-19 presents 'a serious physical or medical condition . . .' as stated in note 1(A) . . .").

The Sentencing Commission's policy statement also includes a catchall provision, which gives the Director of the BOP the authority to determine if extraordinary and compelling reasons exist in situations "other than, or in combination with" the reasons expressly enumerated in the statement. U.S.S.G. 1B1.13 cmt. n1(D). In order to guide these decisions, the Director of the BOP promulgated a Program Statement describing the factors the Director considers in assessing any request for reduction of sentence to determine if extraordinary and compelling reasons exist for the Director to bring a motion on a defendant's behalf. *See* U.S. Department of Justice, Federal Bureau of Prisons, *Program Statement 5050.50*, Jan. 17, 2019, *available at* https://www.bop.gov/policy/progstat/5050_050_EN.pdf (last accessed Feb. 17, 2021). Of course, the BOP's internal program statement is not binding on the Court. *Rodriguez*, 451 F. Supp. 3d at 400 n.12 ("Congress never delegated any authority to the BOP to define the term 'extraordinary and compelling,' nor did it ever instruct courts to act consistently with the BOP's internal guidance.").

The Government argues that the Sentencing Commission's outdated policy statement constrains the Court's ability to assess extraordinary and compelling reasons for a defendant's release on a motion by the defendant. (Gov't's Resp. at 7.) The Court disagrees. Instead, the Court subscribes to the well-reasoned opinion of Judge Anita Brody, and several Courts of Appeals,

5

which have held that in the absence of an applicable policy statement from the Sentencing Commission, the District Court has discretion to determine what circumstances constitute extraordinary and compelling reasons for reduction of a sentence. *United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020); *United States v. Jones*, 980 F.3d 1098, 1111 (6th Cir. 2020); *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020); *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020); *Rodriguez*, 451 F. Supp. 3d at 400 (E.D. Pa. 2020). District courts "are not hamstringed because the Sentencing Commission has failed to update the pertinent guidance." *United States v. Adeyemi*, 470 F. Supp. 3d 489, 510 (E.D. Pa. 2020) (citing *United States v. Dixon*, 648 F.3d 195, 200-01 (3d Cir. 2011)).

The Sentencing Commission's outdated policy statement offers helpful guidance for the Court's assessment of extraordinary and compelling reasons for release, particularly for defendants whose situations are explicitly described in the commentary notes 1(A)-(C). *See Gunn*, 980 F.3d at 1180; *Rodriguez*, 451 F. Supp. 3d at 400. But that policy statement does not preclude the Court from considering other reasons a defendant raises on his or her motion for compassionate release that are not specifically contemplated in the policy statement. *See Brooker*, 976 F.3d at 237 ("the First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release.").

      **B.**      **The First Step Act Amendment to 18 U.S.C. § 924(c)**

This Court sentenced Bayron to 240 months for his use of a firearm during the Philadelphia bank robbery, in violation of 18 U.S.C. § 924(c). Bayron faced a 20-year mandatory minimum sentence for this count only because it was his second conviction pursuant to § 924(c). *See* 18 U.S.C. § 924(c)(1) (1994). However, his first conviction under the section was for the Delaware robbery, which took place *after* the robbery at issue in this case. The prosecution of successive §

924(c) charges—with their accompanying mandatory minimum consecutive sentences—prior to conviction on an earlier § 924(c) charge was a practice prosecutors commonly referred to as a stacking. (Gov't's Resp. at 4.)

The First Step Act ended the practice of stacking § 924(c) charges. Section 403(a) clarified that the higher mandatory minimum sentence for a successive violation of that section does not apply unless the defendant had a previous, final conviction for a § 924(c) charge at the time of the offense. *See* 18 U.S.C. § 924(c)(1)(C); First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194. This amendment to § 924(c) did not apply retroactively to sentences imposed prior to its enactment. First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194 at § 403(b).

Many courts have recently been faced with compassionate release motions of defendants whose sentences for successive § 924(c) violations imposed before passage of the First Step Act are disproportionately long compared to the sentences that would be imposed today. This Court agrees with the sound reasoning of its distinguished colleagues Judges DuBois, Kearney, Beetlestone, and Pappert, and the Fourth Circuit Court of Appeals, who have all concluded that a district court may consider the severity of a defendant's sentence under § 924(c), and the sentencing disparities created by that section's amendment, as one factor in a comprehensive assessment of whether a defendant presents extraordinary and compelling reasons for compassionate release. *United States v. McCoy*, 981 F.3d 271, 285-86 (4th Cir. 2020); *United States v. Ezell*, Crim. A. No. 02-815-1, 2021 WL 510293, at *4-5 (E.D. Pa. Feb. 11, 2021); *United States v. Harris*, Crim. A. No. 97-399-1, 2020 WL 7861325, at *8-12 (E.D. Pa. Dec. 31, 2020); *United States v. Pollard*, Crim. A. No. 10-633-1, 2020 WL 4674126, at *6 (E.D. Pa. Aug. 12, 2020); *United States v. Clausen*, Crim. A. No. 00-291-2, 2020 WL 4260795, at *7 (E.D. Pa. July 24, 2020); *Adeyemi*, 470 F. Supp. 3d 489, 522-25 (E.D. Pa. 2020).

Congress's decision not to make retroactive the First Step Act change to § 924(c) does not alter this Court's discretion to consider the sentencing disparity it creates among factors that could justify a defendant's reduction of sentence for extraordinary and compelling reasons. Indeed, as many courts have noted when interpreting the First Step Act, there is nothing inconsistent in the conclusion that "'not *all* defendants convicted under § 924(c) should receive new sentences,' but that the courts should be empowered to 'relieve *some* defendants of those sentences on a case-by-case basis.'" *McCoy*, 981 F.3d at 287 (citation omitted); *accord Ezell*, 2021 WL 510293, at *5; *Pollard*, 2020 WL 4674126, at *6; *Clausen*, 2020 WL 4260795, at *7; *United States v. Maumau*, Crim. A. No. 08-758, 2020 WL 806121, at *7 (D. Utah Feb. 18, 2020).

On a defendant's motion for compassionate release, where the defendant has a disproportionately long sentence for a successive § 924(c) charge due to stacking, courts often consider factors such as the youth of the defendant at the time of the offense, lack of criminal history, length of time served, and steps taken toward rehabilitation to assess whether the defendant's individualized circumstances constitute extraordinary and compelling reasons to justify early release. *See McCoy*, 981 F.3d at 286; *Ezell*, 2021 WL 510293, at *6-7; *Pollard*, 2020 WL 4674126, at *7. These are many of the same considerations that the Director of the BOP reviews to determine whether to file a motion for compassionate release on a defendant's behalf. *See Program Statement 5050.50* at 12 (listing thirteen factors to be considered for each reduction in sentence request: the nature and circumstances of the defendant's offense, criminal history, comments from victims, unresolved detainers, supervised release violations, institutional adjustment, disciplinary infractions, personal history derived from the presentence report, length of sentence and amount of time served, current age, age at the time of offense and sentencing, release plans, and "[w]hether release would minimize the severity of the offense."). Although the

BOP's program statement is not binding on the Court, at least one court in this district has explicitly analyzed each of the BOP Program Statement's factors to guide its consideration of extraordinary and compelling reasons outside the factors in application notes 1(A)-(C). *See Harris*, 2020 WL 7861325, at *12-15; *Adeyemi*, 470 F. Supp. 3d at 525-29. In the midst of the ongoing COVID-19 pandemic, courts also assess the health risks to a defendant of remaining incarcerated and consider these risks in combination with other factors. *Harris*, 2020 WL 7861325, at *13; *Adeyemi*, 470 F. Supp. 3d at 515-18, 529; *Rodriguez*, 451 F. Supp. 3d at 401.

### C. Extraordinary and Compelling Reasons for Scott Bayron's Release

If Bayron were sentenced after the First Step Act amendment, he would not have been subject to the increased mandatory minimum for a subsequent violation of § 924(c). Under current law, Bayron would likely have faced a seven-year mandatory minimum sentence for this charge. *See* 18 U.S.C. § 924(c)(1)(A)(ii). Thus, the Government concedes that if Bayron were sentenced today, his sentence would likely be at least ten years below the total 35-year sentence he received and less than the time he has already served for these crimes. (Gov't's Resp. at 5.) In light of this sentencing disparity related to Bayron's stacked § 924(c) charge, and upon consideration of many of the factors in the BOP Program Statement and the ongoing COVID-19 pandemic, the Court concludes Scott Bayron has demonstrated extraordinary and compelling reasons that justify a reduction of his sentence.

Bayron committed two bank robberies in a six-month period when he was 22 years old. He had almost no criminal history prior to these offenses. His only prior arrest, when he was 19 years old, related to an incident that occurred while Bayron was working as a clerk at a convenience store. He allowed three persons to enter the store and fill their backpacks with merchandise costing $260.92. For this offense, he was sentenced to probation and community service and

ordered to pay a $477 fine, plus court costs. Bayron did not complete payments toward this fine, and it was forwarded to collections. As a result, the conviction was not expunged.

The nature and circumstances of the bank robberies that landed Bayron in prison were undoubtedly dangerous. In the Delaware robbery, Bayron pointed a gun at a teller to obtain the vault key, and approximately $104,250 was stolen. During the Philadelphia robbery, for which he was sentenced in this Court, Bayron stood in the lobby and brandished a firearm toward bank tellers. Employees reported feeling terrified, but no one was injured, and the defendants stole approximately $296,400. There were three other defendants charged in the Philadelphia robbery, including Scott Bayron's older brother. According to the pre-sentence report, it appears the defendants spent most of the money obtained in the robberies operating a music production company and recording, producing, and marketing a musical album starring Bayron's older brother. These were serious offenses, but the circumstances of the crimes indicate to the Court that they were likely the product of the immaturity of the Defendant at the time they were committed.

Before these offenses, Bayron obtained a GED and enrolled in a semester of community college. He has a verified work history at various retail stores during his young adult years. Bayron's pre-sentence report reflects no history of mental health or emotional issues.

Bayron has spent over 26 years in prison, where he has devoted significant efforts to education, mentorship, and vocational training. Bayron was a carpentry and flooring vocational tutor for more than six years, and he served as a GED tutor for more than three years. (Def.'s Reply at 1.) He has been employed in various positions throughout his time in prison including in the law library, food service, and landscaping. (*Id.*) He states that he has taken numerous American Council on Education (ACE) courses, and he is an avid reader. (*Id.*) He hopes to pursue employment in information technology upon his release. (*Id.*) The Government notes that Bayron

has incurred six disciplinary infractions in the past 25 years, but none of these infractions appear to be violent in nature. (Gov't's Resp. at 3.) Bayron's demonstrated efforts toward rehabilitation, youth at the time of his offenses, lack of criminal history, personal history, and length of time served weigh in favor of finding extraordinary and compelling reasons for a reduction of his sentence.

In addition, Baryon makes this request for compassionate release while the COVID-19 pandemic rages on unchecked in his prison facility. Five inmates are actively infected with COVID-19 at FCI McKean, and over fifty percent of the inmate population has already been infected with the virus. Bayron is at serious risk of contracting COVID-19 if he remains incarcerated. Bayron is 49 years-old, and he is overweight with a body mass index (BMI) of 26.1. (Gov't's Resp. at 4; Def.'s Reply at 2.) The CDC classifies being overweight (BMI between 25 and 30) as a condition that might increase a person's risk of serious illness from COVID-19. *People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Feb. 17, 2021). Although Bayron's BMI is on the lower end of this spectrum, he still qualifies as a person who may be at heightened risk of serious illness from COVID-19. Where, as here, the Defendant has engaged in substantial rehabilitation, and has served most of the sentence imposed and longer than he would have served had he been sentenced under current law, the Court will not tolerate any risk that Defendant's already exaggerated term of imprisonment could result in a death sentence from COVID-19. Considering the status of the pandemic where Bayron is housed and his health, in conjunction with all of the other factors that justify a reduction of his sentence, the Court concludes that there are extraordinary and compelling reasons for Bayron's immediate release.

### D. Consistency with Sentencing Considerations

Having found Bayron has demonstrated extraordinary and compelling reasons for his compassionate release, the Court must next consider whether reduction of his sentence is appropriate in light of the Section 3553(a) sentencing factors. Those factors include the nature and circumstances of the offense, the defendant's history and characteristics, the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, and to provide adequate deterrence to criminal conduct. 18 U.S.C. § 3553(a)(1)-(2)(A-B). Additional factors include the need for the sentence to protect the public from further crimes of the defendant and to provide the defendant with needed training, medical care, and other treatment. *Id*. § 3553(a)(2)(C-D).

After accounting for good conduct time accrued, Bayron has already served over 85 percent of his total sentence. He is currently due to be released in 44 months. The fact that Bayron has served such a significant portion of his sentence weighs strongly in favor of his early release. *See United States v. Pawlowski*, 967 F.3d 327, 331 (3d Cir. 2020). Reducing his sentence to time served will still sufficiently reflect the seriousness of the offenses, promote respect for the law, provide just punishment, afford adequate deterrence to criminal conduct, and avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. *See* 18 U.S.C. § 3553(a)(2,6).

In addition, Bayron's minimal and non-violent criminal history prior to the bank robberies indicates he will not be a danger to the public. Bayron's personal history, rehabilitative efforts in prison, and his age now compared to his youth at the time of the offenses indicate he is unlikely to commit future crimes upon his release at age 49. Bayron is also required to spend five years on

supervised release, and this continuous monitoring should provide adequate deterrence and protect the public from further crimes.

Because of the ongoing pandemic, Bayron's ability to continue training and other rehabilitation while incarcerated is diminished. Likewise, in light of the heightened risks of contracting COVID-19 while incarcerated, his need for adequate medical care favors release. Considering all of the relevant sentencing factors, the Court concludes that compassionate release is warranted.

### III.   CONCLUSION

For the foregoing reasons, Scott Bayron's motion for compassion release under 18 U.S.C. § 3582(c)(1)(A)(i) is granted and his prison term reduced to the time he has already served. Bayron must now begin five years of supervised release. An Order consistent with this Memorandum will be docketed separately.